UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JEFFREY SHANKS,

    Plaintiff,

v.                                                      CASE NO. 4:26-cv-36

MARGO SCHWADRON and PUBLIC
EMPLOYEES FOR ENVIRONMENTAL
RESPONSIBILITY,

    Defendants.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, JEFFREY SHANKS, by and through his undersigned counsel, files this Complaint against Defendants, MARGO SCHWADRON and PUBLIC EMPLOYEES FOR ENVIRONMENTAL RESPONSIBILITY, and alleges as follows:

## INTRODUCTION

1. Plaintiff, Jeffrey Shanks, is an accomplished and respected archaeologist in the state of Florida. Over the course of several years, Defendant MARGO SCHWADRON ("SCHWADRON") has besmirched Plaintiff's character, credibility, and professional standing in a retaliatory and defamatory campaign of lies and deceit.

2. Defendant PUBLIC EMPLOYEES FOR ENVIRONMENTAL

1

RESPONSIBILITY ("PEER") has used its national platform to restate, amplify, and spread SCHWADRON's lies.

3. SCHWADRON and PEER, with knowledge of its falsity, have published and repeated the lie that Plaintiff trafficked in stolen Native American human remains.

4. As a result, Plaintiff has suffered reputational, professional, and psychological damage.

## Parties

5. Plaintiff, Jeffrey Shanks is a citizen of the State of Florida and is domiciled in Tallahassee, Florida. Plaintiff is a professional archaeologist with more than sixteen years of service with the National Park Service (NPS) and is currently employed with a private engineering consultant in Tallahassee, Florida.

6. Plaintiff is not a public official or a public figure and at no times has Plaintiff injected himself into a public controversy.

7. Defendant Margo SCHWADRON is a citizen of the state of Oregon and is domiciled in Oregon. She is a Regional Archeologist for the U.S. Fish & Wildlife Service (FWS) for the Pacific and South Pacific Regions. Prior to July 2023, and during much of the time relevant to this lawsuit, Defendant SCHWADRON worked as an archaeologist for the NPS Southeast

Archeological Center in Tallahassee, Florida.

8. Defendant Public Employees for Environmental Responsibility (PEER) is nonprofit corporation incorporated in the District of Columbia with a principal place of business in Silver Spring, MD.

## Subject Matter Jurisdiction

9. This Court has subject matter jurisdiction under 28 U.S.C. §1332 (diversity jurisdiction) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

## Personal Jurisdiction

10. This Court has personal jurisdiction over SCHWADRON pursuant to Florida's long-arm statute, Fla. Stat. § 48.193(1)(a)(2), because she committed tortious acts within Florida by publishing and causing to be published and disseminated false and defamatory statements concerning Plaintiff to recipients located in Florida.

11. SCHWADRON directed false and defamatory statements about Plaintiff into Florida, including communications to Florida-based tribal representatives, Florida governmental agencies, Florida professional organizations, and Florida residents, concerning Plaintiff's professional conduct and alleged criminal activity.

12. SCHWADRON knew Plaintiff resided and worked in Florida,

knew that the alleged defamatory statements concerned Plaintiff's Florida-based employment and professional reputation, and knew or reasonably should have known that the brunt of the reputational and economic harm would be suffered in Florida.

13.  SCHWADRON's conduct constitutes intentional tortious activity expressly aimed at the State of Florida, and the exercise of personal jurisdiction over her is consistent with due process.

14.  At all relevant times, SCHWADRON acted outside the scope of any lawful federal employment duties, without authorization, and for personal, retaliatory, and defamatory purposes. Her actions were not undertaken in furtherance of any legitimate governmental function and therefore do not give rise to immunity.

15.  This Court has personal jurisdiction over PEER because PEER purposefully directed tortious conduct toward Florida by publishing false and defamatory statements about Plaintiff, a Florida resident, on its website and through a press release that were intentionally disseminated nationwide, including to Florida.

16.  PEER expressly identified Plaintiff by name, described Plaintiff's Florida-based professional activities, and published statements accusing Plaintiff of criminal conduct, knowing Plaintiff resided and

4

worked in Florida and that the reputational and economic harm would be suffered primarily in Florida.

17. PEER deliberately made false and defamatory statements about Plaintiff, knowing that he was a citizen of the State of Florida working as an archaeologist in that state, knowing that the statements would be read by persons in Florida, and knowing that the brunt of the harm would be suffered by Plaintiff in Florida.

18. PEER's conduct constitutes purposeful use of the privilege of conducting activities within Florida, and PEER could reasonably anticipate being haled into court in Florida as a result of its intentional publication of defamatory statements aimed at a Florida resident.

## Venue

19. Venue is proper in the Northern District of Florida under 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

20. The defamatory statements at issue were received, republished, relied upon, and caused reputational and economic injury to Plaintiff in this District, where Plaintiff lives and maintains his professional reputation and career.

21. Plaintiff's professional standing, employment opportunities, and

community reputation are centered in Tallahassee, Florida, within the Northern District of Florida, and the primary effects of Defendants' tortious conduct were suffered here.

## STATEMENT OF FACTS

22. In January 2020, Plaintiff made protected disclosures of misconduct involving Defendant SCHWADRON related to compliance with the Native American Graves Protection and Repatriation Act (NAGPRA).

23. Following these disclosures, Defendant SCHWADRON engaged in a sustained campaign of retaliation and defamation, spreading false allegations to tribes, agencies, and colleagues, including false claims that Plaintiff and his supervisor, Mike Russo, trafficked in stolen Native American human remains.

24. SCHWADRON made these false and defamatory statements about Plaintiff outside the scope of her federal employment, and the statements were not authorized or condoned by her employer.

25. In November 2021, based on her allegations, the Department of the Interior Office of Inspector General (OIG) opened an investigation (Case No. 22-00079) into Plaintiff and Russo.

26. In September 2023, the OIG report cleared Plaintiff and Russo of SCHWADRON's claim that they had trafficked in stolen Native American

human remains.[1]

## Defamatory Statements by Defendant Schwadron to Public Employees for Environmental Responsibility

27.     According to its website, PEER "supports current and former public employees who seek a higher standard of environmental ethics and scientific integrity within their agencies ... by defending whistleblowers, shining the light on improper or illegal government actions, working to improve laws and regulations, and supporting the work of other organizations."

28.     SCHWADRON provided the OIG report and other related materials, to PEER.

29.     On April 15, 2024, PEER published a press release on its website *Park Service Archeological Scandal Sparks No Reforms. Trade in Native American Skulls and Funerary Pots Did Not Trigger Charges*. The PEER press release read, in part

> A multi-year investigation has concluded that two National Park Service (NPS) archeologists committed extensive financial and ethical improprieties, but **their trafficking in stolen Native American human remains** did not constitute violations of law. That result creates a bad precedent which may hinder the

---

[1] The OIG did substantiate certain administrative violations against Plaintiff, including failing to having an ethics consultation before serving as liaison to a partner organization, assisting a partner organization with a fundraising campaign while an NPS employee, accepting payment for travel expenses from a partner organization without required approval, assisting a partner organization with grant applications, and using his government equipment for personal business.

7

legally required repatriation of such materials in the future, according to Public Employees for Environmental Responsibility (PEER).

…

**The IG also substantiated that in 2017, Shanks and Russo befriended a known looter of burial mounds who offered to sell his collection of funerary pots and two Native American skulls.** The two archeologists retained a straw buyer to "purchase" the materials, which were then stored at the SEAC facility. For five years, the funerary pots were kept in cardboard boxes while students and staff handled, photographed, and researched the skulls and pots. **All the while, they did not inform any federally recognized tribe that they possessed the collection, as required by the Native American Graves Protection and Repatriation Act (NAGPRA).**

…

"By ignoring these **blatant desecrations** and focusing only on ethics violations, the IG made a bad situation worse," stated Pacific PEER Director Jeff Ruch, noting that the IG wrongly concluded the archeologists did not technically violate NAGPRA because it could not prove the **notorious looter** lacked a "permit" of which there was no record. "The whole point of NAGPRA is to protect Native American burial mounds and graves from systematic desecration in the name of 'archeological science.'"

30. The PEER press release is not a fair or accurate summary of the OIG report. It is not presented as an opinion.

31. Beneath the PEER press release are multiple links, including one to the OIG report. At the time of publication, the OIG report contained no redactions. PEER subsequently substituted a redacted version.

32. In the OIG report, Russo is identified as "Archaeologist 1", and Plaintiff is identified as "Archaeologist 2."

33. The PEER press release grossly misstates the OIG findings and attributes criminal actions to Plaintiff.

    (a) The PEER press release states that Russo and Plaintiff "**traffick[ed] in stolen Native American human**," though the OIG report makes no such finding, and instead found that "transporting the two Native American skulls did not constitute a criminal violation under 18 U.S.C. § 1170 because Archaeologists 1 and 2 did not transport them for sale or profit, which is a necessary element of that statute."

    (b) The PEER press release states that the subject remains were **"stolen" by a "known looter"** even though the OIG report found "no evidence disproving the Archaeological Collector's widow's statement that the Archaeological Collector had a valid permit to excavate and remove the archeological resources from the base."

    (c) The PEER press release states that the OIG substantiated that "**Shanks and Russo befriended a known looter of burial mounds who offered to sell his collection of funerary pots and two Native American skulls**" even though the OIG report explained that "Archaeologist 1" (Russo, Shanks's supervisor) met the "known looter" and arranged for a third party to purchase the items. The OIG report does not state that Shanks had any involvement with the "known looter" other than accompanying his supervisor to retrieve the items on a single occasion.

    (d) The PEER press release states that "By ignoring these **blatant desecrations** and focusing only on ethics violations, the IG made a bad situation worse." However the OIG report found no "desecration" or violation of any cultural resource law.

34. The conduct that PEER highlights—arranging the purchase of

artifacts, using a third party to acquire them, and transferring human remains—was performed by Archaeologist 1 (Russo), not Plaintiff. Yet PEER names both individuals equally in their accusations of "trafficking in stolen Native American human remains."

35. The misattribution of Russo's conduct to Plaintiff compounds the mischaracterization. PEER's naming of both individuals equally in accusations of "trafficking" is an intentional mischaracterization.

36. The OIG report explicitly found that the conduct at issue did not violate the Archaeological Resources Protection Act (ARPA), did not violate the Native American Graves Protection and Repatriation Act (NAGPRA), and did not violate 18 U.S.C. § 1170 (illegal trafficking in Native American human remains). The U.S. Attorney's Office declined prosecution.

37. Despite these explicit findings—and despite Plaintiff's minimal involvement in the conduct at issue—the PEER press release falsely states that Plaintiff "traffick[ed] in stolen Native American human remains."

38. The PEER press release is a materially false and misleading summary of an official report by the OIG.

39. The PEER press release itself links directly to the OIG report. The stark contradictions between the press release claims and the OIG findings establish PEER's negligent mischaracterization of the findings.

10

40. In May 2024, Plaintiff, through counsel, contacted PEER in an attempt to explain the inaccuracies in the press release but PEER refused to engage in any meaningful discussion.

41. Defendant Schwadron has continued to share the press release and make false and defamatory statements about Plaintiff, including on her LinkedIn account and to persons and organizations in and outside of Florida, in an attempt to destroy Plaintiff's reputation. She has been partially successful in this.

**Defamatory Statements by Defendant Schwadron to the Society for American Archaeology**

42. The Society for American Archaeology (SAA) is an international organization dedicated to research about and interpretation and protection of the archaeological heritage of the Americas.

43. Plaintiff is a member of SAA, and maintaining a good professional relationship with the organization is necessary for his career.

44. Notwithstanding the OIG finding that Russo and Plaintiff had not trafficked in Native American human remains or violated NAGPRA, SCHWADRON contacted the SAA board of directors the week prior to its national conference scheduled for April 17-21, 2024, in New Orleans and insisting that Plaintiff be removed from the event, falsely claiming again that he had trafficked in stolen Native American human remains.

45. SCHWADRON's statement to SAA was presented as an objective fact, but the information was false.

46. The SAA Board met over the weekend, reviewed the OIG report, and denied Defendant SCHWADRON's request to remove Plaintiff from the conference. However, Plaintiff was pressured to step down from one of the panels he was on.

### Defamatory Statements by Defendant Schwadron to the Seminole Tribe of Florida

47. The Seminole Tribe of Florida (STOF) is a federally recognized Seminole tribe based in Florida. It has six (6) Indian reservations in Florida.

48. Plaintiff has worked with the STOF throughout his career, and his continued career is largely dependent on maintaining a good working relationship with it.

49. Defendant SCHWADRON repeated and has continued to repeat the same false and defamatory information to the STOF.

50. In June of 2022, Plaintiff was invited to visit an archaeological site on private property near Tallahassee, by Bill Steele, the former Tribal Historic Preservation Officers (THPO) of the STOF.

51. Just before the visit, Steele contacted Plaintiff and stated that the STOF did not want Plaintiff to be present. Steele later explained to Plaintiff that Defendant SCHWADRON told the STOF that Plaintiff was planning to

12

dig up burials, was selling illegal artifacts, and had Native American skulls on his desk. These statements were false.

52. After independently investigating Defendant SCHWADRON's accusations, the STOF determined them to be false and filed complaints with NPS at the national level.

### Defamatory Statements by Defendant Schwadron to the United States Forest Service

53. The United States Forest Service (USFS) operates a Tribal Relations Program that focuses on building nation-to-nation partnerships with American Indian tribes, recognizing their sovereignty and trust responsibilities to incorporate traditional knowledge, protect sacred sites, and collaboratively manage forests for healthy landscapes and cultural preservation.

54. Plaintiff has worked with the USFS throughout his career, and his continued career is largely dependent on maintaining a good working relationship with it.

55. Defendant SCHWADRON repeated the same false and defamatory statements to Reed Robinson, USFS Director of Tribal Relations in the Washington office.

### Defamatory Statements by PEER Relied Upon by Coastal Heritage at Risk Task Force

56. The Coastal Heritage at Risk Task Force (CHART) is an organization that protects the untold stories of Black, Indigenous, and Latino heritage along the southeast coast of the U.S. to the Caribbean.

57. Plaintiff served on a Board that was to perform consulting work with CHART.

58. After reading the PEER release, a member of CHART reported the false and defamatory statements to CHART Director Dr. Meryl Shriver-Rice, who reluctantly asked Plaintiff to step down from the project.

### Republication of Defamatory Statements by the Tallahassee City Commission

59. At the request of the local African American community in 2019, Plaintiff conducted a ground-penetrating radar survey to locate graves of enslaved persons on land leased by the City of Tallahassee to the Capital City Country Club.

60. During a City Commission meeting about the sale of that land by the City to the Capital City Country Club on December 10, 2025, Plaintiff's report was discussed.

61. During the public hearing, a Tallahassee Commissioner echoed the false and defamatory statements of Defendants SCHWADRON and PEER and stated:

14

> We can't speak to Jeff Shanks because he's been found guilty of committing extensive financial and ethical improprieties by trafficking in stolen native American human remains.

### *University Press of Florida Book Deal Canceled After Contributors Read the PEER Press Release*

62. Plaintiff was to be a co-editor of a volume of essays published by the University Press of Florida (UPF).

63. After seeing the false and defamatory PEER press release, several of the contributors contacted UPF Series Editor Mary Puckett and pulled out of the project.

64. As a result, the project was cancelled and Plaintiff lost the book deal.

### Plaintiff's Damages and Reputational Harm

65. PEER and SCHWADRON published and continue to publish the Defamatory statement that Plaintiff trafficked stolen Native American human remains with knowledge of the falsity of the statement.

66. SCHWADRON's defamatory statements, amplified by PEER's defamatory press release, created such intolerable working conditions that Plaintiff was unable to continue working at NPS and made the difficult decision to leave for work in the private sector.

67. After PEER's publication of the defamatory press release, Defendant SCHWADRON contacted numerous prominent people in the

15

archaeological community with whom Plaintiff has worked and partnered over the years, and repeated the same defamatory statements. Plaintiff was contacted individually by many of these individuals, including an NPS Capital Region Regional Archaeologist; an Archaeological Conservancy Board Member; and an Osceola National Forest District Archaeologist. All shared with Plaintiff that Defendant SCHWADRON repeated the false and defamatory statements to them.

68. PEER's and SCHWADRON's defamatory statements charge Plaintiff with conduct that constituted a felony under federal law.

69. Plaintiff has suffered damages as a result of Defendants' actions including, but not limited to:

- (a) Loss of a sixteen-year federal career, including pension and benefits, valued at approximately $2 million.
- (b) Loss of a university press book contract when other contributors pulled out of the project due to defamatory statements from Defendant SCHWADRON.
- (c) Removal from professional panels and working groups, causing reputational harm and lost opportunities.
- (d) Severe emotional distress and humiliation.

70. Plaintiff is entitled to compensatory damages, punitive damages, costs, and attorney's fees.

16

## COUNT I
### (*Defamation Per Se – Schwadron and PEER*)

71. Shanks re-alleges paragraphs 1 through 70 as if fully set forth herein.

72. SCHWADRON and PEER published or caused to be published in April 2024, and have since continued to publish and republish, the false and defamatory statement that Plaintiff trafficked stolen Native American human remains.

73. SCHWADRON and PEER have published the false and defamatory statements to multiple third persons since April 2024.

74. SCHWADRON and PEER failed to verify the information they published, ignored contrary information in the OIG report, and published the false and defamatory information despite knowledge of its falsity.

75. At minimum, SCHWADRON and PEER acted with negligence.

76. SCHWADRON and PEER acted with actual malice, and with knowledge of the falsity of the statement or with reckless disregard for truth.

77. SCHWADRON and PEER both knew that the OIG report cleared Plaintiff of any allegation that he trafficked stolen Native American human remains, yet Schwadron and PEER repeated the allegations.

78. The false statements that Plaintiff trafficked stolen Native American human remains constitute defamation *per se* because they tended

17

to injure Plaintiff in his trade, business or profession and directly charged Plaintiff with a felony crime.

79. Plaintiff has suffered significant damages as a result of Defendants Schwadron's and PEER's false and defamatory statements, including damage to his reputation, humiliation, embarrassment, mental suffering, shame, emotional distress, loss of employment and employment opportunities, economic damages, and other harms, all of which are ongoing in nature and will be suffered in the future.

## COUNT II
### (Defamation by Implication – Schwadron and PEER)

80. Plaintiff re-alleges paragraphs 1 through 70 as if fully set forth herein.

81. PEER and SCHWADRON published statements and publications that, when considered as a whole and in context, conveyed the false and defamatory implication that Plaintiff engaged in criminal trafficking of stolen Native American human remains.

82. Although PEER and SCHWADRON selectively referenced portions of an official investigation, they omitted material exculpatory findings, mischaracterized the nature of the conduct at issue, and attributed criminal and unethical actions to Plaintiff that were not supported by the underlying facts or findings.

18

83. SCHWADRON and PEER knew or should have known that the juxtaposition of their statements, headlines, and characterizations would lead reasonable readers to conclude falsely that Plaintiff committed criminal acts involving Native American human remains.

84. SCHWADRON and PEER intended or recklessly disregarded the defamatory implications of their publications, which were reasonably foreseeable and in fact caused reputational and professional harm to Plaintiff.

85. As a direct and proximate result, Plaintiff has suffered damages as alleged herein.

## PRAYER FOR RELIEF

SCHWADRON, Plaintiff, Jeffrey Shanks, demands judgment against Defendants Schwadron and PEER:

(a) An award of compensatory, special and punitive damages with pre and post-judgment interest, in appropriate amounts to be established at trial;

(b) A declaratory judgment that Defendants' statements accusing Plaintiff of trafficking in stolen Native American human remains are false and defamatory.

(c) An order requiring Defendant PEER to publish a corrective statement or retraction with comparable prominence to the original defamatory publication.

(d) Permanent injunctive relief prohibiting the publication or republication of the false and defamatory statements;

(e) Plaintiff's attorney fees and costs; and

(f) Such other and further relief as the Court deems just and appropriate to protect Plaintiff's rights and interests.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

January 22, 2026

*/s/ Jamie Ito*
**JAMIE ITO**
Florida Bar No. 13553
Jamie@itolaw.net
Ito Law, PLLC
411 Wilson Ave.
Tallahassee, FL 32303
(850) 296-3717
Attorney for Plaintiff

20