**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

JEFFREY SHANKS,

      Plaintiff,

v.                             CASE NO. 4:26cv36-RH-MJF

MARGO SCHWADRON et al.,

      Defendants.

_____/


**<u>ORDER DENYING THE MOTIONS TO DISMISS</u>**


This is a defamation case. The defendants made statements about the

plaintiff based on an inspector general's report. The plaintiff says the statements

were inconsistent with, not accurate descriptions of, the report's conclusions, and

that the statements were defamatory. The defendants have moved to dismiss the

complaint for failure to state a claim on which relief can be granted. This order

denies the motions.

**I. The governing standards**

To survive a motion to dismiss for failure to state a claim, a plaintiff must

plead "factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009). For purposes of a motion to dismiss, the complaint's factual allegations, though not its legal conclusions, must be accepted as true. *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The factual allegations must be sufficient to make a claim "plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570).

A motion to dismiss is not the vehicle by which the truth of a plaintiff's factual allegations should be judged. Instead, it remains true, after *Twombly* and *Iqbal* as before, that "federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later." *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 168–69 (1993).

## II. The underlying events

The plaintiff Jeffrey Shanks was an archaeologist employed at the National Park Service. His supervisor, also an archaeologist, was Mike Russo. Mr. Russo and Mr. Shanks were the subject of an inspector general's investigation, perhaps initiated based on information provided by the defendant Margo Schwadron, another Park Service archaeologist. After an investigation, the inspector general issued a report that included the following facts, which are largely undisputed.

A collector approached Mr. Russo with an offer to sell the Park Service items retrieved from burial mounds on Tyndall Air Force Base. The report refers to

these as potsherds, defined as pottery fragments found at archaeological sites. Items placed with human remains as part of a death rite are known as funerary objects. Mr. Russo concluded the Park Service could not purchase the collector's items because if, as the collector said, they had been obtained at Tyndall, they would be considered funerary objects, whose purchase would be illegal. For convenience, this order sometimes refers to these items as potsherds, not funerary objects, without noting each time any uncertainty about their actual nature.

To avoid the perceived legal obstacle to purchasing these items, Mr. Russo enlisted a straw purchaser, who provided Mr. Russo a $1,000 check payable to the collector. Mr. Russo apparently intended to obtain the items to donate them to the State of Florida for preservation. Mr. Russo, accompanied by his subordinate Mr. Shanks, traveled to the collector's location, delivered the check to the collector, and took possession of the items, together with two Native American skulls. The skulls found their way to the State of Florida, which, at the time of the inspector general's report, was in the process of repatriating them. But the potsherds wound up on a shelf in Mr. Russo's office.

The inspector general concluded Mr. Russo's and Mr. Shanks's actions did not violate the most closely implicated federal criminal statute, 18 U.S.C. § 1170, which is entitled "Illegal trafficking in Native American human remains and cultural items."

Under § 1170(a), it is a crime to sell or purchase Native American human remains or to use or transport them "for sale or profit." Mr. Russo apparently purchased only the potsherds, not the skulls, and the skulls were not used or transported for sale or profit. On those facts, there was no violation of this statute.

Under § 1170(b), it is a crime to sell or purchase Native American cultural objects "obtained in violation of the Native American Grave Protection and Repatriation Act" or to use or transport such objects "for sale or profit." Mr. Russo purchased the potsherds—the straw buyer does not change this—but the inspector general was unable to establish that the collector obtained the potsherds after NAGPRA's 1990 enactment. If the collector obtained them earlier, there was no violation of § 1170(b). Moreover, the collector purportedly had a permit to excavate at Tyndall, and while the absence of a record at Tyndall verifying this would ordinarily refute the claim, many of Tyndall's records were destroyed in Hurricane Michael. If the collector legally obtained the items, even after NAGPRA's enactment, their purchase by Mr. Russo was not a violation of § 1170(b). And in any event, the inspector general's report directly implicated only Mr. Russo, not Mr. Shanks, in purchasing the items. Neither Mr. Russo nor Mr. Shanks used or transported the objects for sale or profit.

Case No. 4:26cv36-RH-MJF

### III. The complaint

The complaint names two defendants. The first, Ms. Schwadron, is an archaeologist who worked for the National Parks Service and may have provided the information that triggered the inspector general's investigation. The second defendant, Public Employees for Environmental Responsibility ("PEER"), is a nonprofit corporation that, according to the complaint, "supports current and former public employees who seek a higher standard of environmental ethics and scientific integrity within their agencies . . . by defending whistleblowers, shining the light on improper or illegal government actions, working to improve laws and regulations, and supporting the work of other organizations." Compl., ECF No. 1 at 7 ¶ 27.

The complaint alleges two claims, both against both defendants. Count 1 alleges defamation per se. Count 2 alleges defamation by implication. The counts themselves are brief, but they follow a long description of the underlying events—far longer than set out above.

The long description does not make clear which statements by which defendant are alleged to be actionable. Count 1 itself refers to "the false and defamatory statement that [Mr. Shanks] trafficked stolen Native American human remains." Compl., ECF No. 1, at 17 ¶¶ 72, 78. Count 2 itself refers to the defamatory implication that Mr. Shanks "engaged in criminal trafficking of stolen

Native American human remains" or "committed criminal acts involving Native American human remains." *Id*. at 18-19 ¶¶ 81, 83. If not the only statements Mr. Shanks asserts are actionable, these are certainly the primary statements he asserts are actionable.

## IV. Merits

The complaint alleges the inspector general's report "cleared [Mr. Shanks] of any allegation that he trafficked stolen Native American human remains." *E.g.*, *id*. at 17 ¶ 77. That is an overly generous reading of the report. The report confirmed that Mr. Russo, at least, obtained human remains from a person whose legitimate acquisition of them could not be verified, and that Mr. Shanks was present when the remains were accepted and transported away. That the inspector general concluded this did not violate a specific criminal statute hardly cleared Mr. Shanks of wrongdoing.

The critical question, though, is not whether the inspector general's report cleared Mr. Shanks, but whether the defendants' allegedly false statement that he trafficked stolen Native American human remains, or a collection of statements that in context imply he did so, could be found to be defamatory. "Trafficking" can be defined as "[t]he act of transporting, trading, or dealing, esp. in illegal goods or people." *Trafficking*, *Black's Law Dictionary* (12th ed. 2024). But a law enforcement officer does not traffic in drugs when seizing them for legitimate

purposes, and a federal archaeologist does not traffic in human remains when obtaining them by proper means to have them repatriated. It is not clear the means used here were proper, and the defendants had every right to criticize the process.

That does not mean, however, that the defendants were entitled to accuse Mr. Shanks of trafficking in "stolen" human remains. Even if acquiring the remains in connection with a straw purchase of the potsherds could be labeled trafficking, and even if Mr. Shanks could be deemed a participant in that trafficking, the assertion that the remains were "stolen" adds a defamatory element. Mr. Russo acquired the remains from a collector—PEER called him a "known looter"—and delivered them free of charge to the State of Florida for repatriation. Without more, that falls well short of trafficking in stolen human remains.

This order thus denies the motions to dismiss. The order makes no ruling on whether other statements attributed to the defendants are actionable. This is so for at least two reasons: first, it is not clear which other statements, if any, Mr. Shanks asserts are actionable; and second, the motions to dismiss can be—indeed have been—resolved without addressing the other statements. Mr. Shanks should expect to respond fully and on time to contention interrogatories or other discovery requests seeking clarification of his claims. And it bears noting that at least one of PEER's statements—the reference to "blatant desecrations"—was a nonactionable opinion.

Case No. 4:26cv36-RH-MJF

## V. Procedural defenses

The motions to dismiss cannot be granted based on the defendants' asserted procedural defenses. Florida's fair-report privilege, *see, e.g.*, *Rasmussen v. Collier Cnty. Publ'g Co.*, 946 So. 2d 567, 570 (Fla. 2d DCA 2006), does not apply if, as the complaint alleges, the defendants' statements were not a fair description of the inspector general's report. The anti-SLAPP statute, Florida Statutes § 768.295(1), does not apply to actionable defamation. *See McQueen v. Baskin*, 377 So. 3d 170, 176 (Fla. 2d DCA 2023). And the statute requiring prior notice of a libel or slander claim, Florida Statutes § 770.01, applies only to media defendants. *See, e.g.*, *Zelinka v. Americare Healthscan, Inc.*, 763 So. 2d 1173, 1175 (Fla. 4th DCA 2000). The complaint does not allege that PEER is a media defendant, and Ms. Schwadron plainly is not.

## VI. Conclusion

For these reasons,

IT IS ORDERED:

The motions to dismiss, ECF Nos. 9 and 17, are denied.

SO ORDERED on May 27, 2026.

s/Robert L. Hinkle
United States District Judge